IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-06-00369-CV

 

In the
Matter of the Marriage

of David
L. Smith and Jennifer Smith,

 

 

 



From the 85th District Court

Brazos County, Texas

Trial Court No. 06-000859-CVD-85

 



MEMORANDUM  Opinion



 

Appellant David Smith is attempting to appeal the
trial court’s July 3, 2006 final divorce decree.  He filed his notice of appeal
on August 22, 2006.  Notice of appeal was required within 30 days after the
decree was signed, (Tex. R. App. P.
26.1), and a motion for extension of time to file notice of appeal was required
within 15 days after the deadline for filing the notice of appeal.  Tex. R. App. P. 26.3.

We notified Appellant in a letter dated November
22, 2006 that his appeal may be dismissed for want of jurisdiction unless he
filed a response within 21 days showing grounds for continuing the appeal. 
Appellant has not responded.

Appellant’s notice of appeal was untimely to
invoke our jurisdiction.  See id.  This
appeal is dismissed for want of jurisdiction.  See Tex. R. App. P. 42.3(a), 43.2(f).

 

PER CURIAM

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissents, noting that we have jurisdiction because the notice of
appeal was timely pursuant to Texas Rule of Appellate Procedure 30.  See Tex. R. App. P. 26.1(c).)

Appeal dismissed

Opinion delivered and
filed January 10, 2007

[CV06]






ed
A.W.’s sexual organ by his finger and by his sexual organ.  At trial, Rivera
denied committing the offenses and denied ever penetrating A.W. or engaging in
any sexual contact with A.W.  He stood by the written statement he provided to
Detective Lonnie Underberg:

My name is Santiago Rivera and as to the night of
an incident regarding [A.W.], there was the night myself, my daughter, and
[A.W.] were asleep on my bed.  I awakened to I thought was a dream of [A.W.] straddling
me so I pushed her aside and went back to sleep.  The incident happened in my
bedroom.

 

However, Investigator Don Marshall testified that
prior to giving this statement, Rivera admitted to “some contact between his
penis and the little girl’s vagina” and that he “put his penis inside of her
vagina about halfway.”  Rivera denied making these statements, claiming that,
during the interview, Marshall presented different scenarios for what may have
occurred, all of which Rivera denied.  

After the State rested, and upon Rivera’s request,
the State elected to rely on the date alleged in the indictment as the last
instance of abuse described by A.W.  This particular act involved the
“straddling” incident described in Rivera’s written statement.  The court gave
the following limiting instruction in the jury charge:

You are instructed that if there is any testimony
before you in this case regarding the defendant’s having committed any offenses
other than the offenses alleged against him in the indictment in this case, you
cannot consider said testimony for any purpose unless you find and believe
beyond a reasonable doubt that the defendant committed such other offenses, if
any were committed, and even then you may only consider the same in passing
upon the credibility of the testimony of the defendant as a witness in this
case and for no other purpose.

 

(Emphasis added).  Rivera neither requested this
instruction nor objected to it.

ANALYSIS

            When reviewing a jury
charge, we first examine the charge for error.  See Ngo v.
State, 175
S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing Middleton
v. State, 125
S.W.3d 450, 453 (Tex. Crim. App. 2003)).  If error occurred, we then decide
whether the error caused harm.  See id.  Where, as here, the defendant
does not object to the charge, he must show egregious harm to be entitled to
reversal.  See id. at 743-44 (citing Bluitt
v. State, 137
S.W.3d 51, 53 (Tex. Crim. App. 2004); Almanza v. State, 686 S.W.2d 157,
171 (Tex. Crim. App. 1985)).

In his first issue, Rivera
contends that the court limited the jury’s consideration of extraneous offenses
to an improper purpose.  In his second issue, Rivera complains that the trial court erred by failing to give an
instruction in the jury charge that limited the jury’s consideration of the
extraneous offenses to their proper admissible purpose.  Because Rivera
addresses both these issues collectively, we will do the same.

When the State elects the acts on which it will
rely for conviction, a defendant is entitled to an instruction charging the
jury to consider only the elected acts in deciding guilt and limiting the
jury’s consideration of the other unelected acts to the purposes for which they
were admitted.  See Bates v. State, 305 S.W.2d 366, 368 (Tex. Crim. App. 1957); see also Duran
v. State, No. 03-02-00253-CR, 2003 Tex. App. Lexis 287, at *11 (Tex.
App.—Austin Jan. 16, 2003, pet. ref’d) (mem. op.) (not designated for
publication) (After the State’s election, “appellant was
entitled to have the jury instructed to consider only the elected acts in
determining his guilt, and to have the jury further instructed regarding the
limited purposes for which it could consider the other acts proved by the
State.”); Martin v.
State, 176 S.W.3d 887, 905 (Tex. App.—Fort Worth 2005, no
pet.) (After the State elects the act on which it will rely, “a defendant is entitled to have a limiting instruction given to
the jury as to the remaining
or extraneous incidents”).  In this case, evidence of other “crimes, wrongs, or
acts” committed by Rivera against A.W. was admissible for its bearing on the
state of mind of Rivera and A.W. and on their previous and subsequent
relationship.  See Tex. Code
Crim. Proc. Ann. art. 38.37, § 2 (Vernon Supp. 2006).  After the State
elected the acts on which it would rely for conviction, a proper limiting
instruction in the charge on the unelected—and thus ostensibly
extraneous—offenses would have limited the jury’s consideration of that
evidence for its bearing on the state of mind of Rivera and A.W. and on their
previous and subsequent relationship.

Except for prior convictions admitted under Rule
of Evidence 609, extraneous-offense evidence is not admissible to impeach a
testifying defendant.  See Tex.
R. Evid. 608(b); see also Tex.
R. Evid. 609.  The defendant can “open the door” by leaving a false
impression with the jury about a relevant act or character trait, and evidence
of an extraneous act that tends to rebut the false impression may be admissible
to impeach the defendant, but with a limiting instruction informing the jury
that it may use the extraneous-offense evidence to gauge the defendant’s
credibility.  See Daggett v. State, 187 S.W.3d 444, 452-53 (Tex. Crim. App. 2005).  But in a case such as this where the extraneous offenses are the
unelected offenses that were admissible under section 2 of article 38.37 and
the defendant merely testifies that he did not commit the elected offenses and
the now-extraneous (i.e., unelected) offenses, a limiting instruction to
the jury that it may use those extraneous offenses to pass on the credibility
of the defendant’s testimony is erroneous.  See Crawford v. State, 696
S.W.2d 903, 907-08 (Tex. Crim. App. 1985) (holding as erroneous trial court’s
limiting instruction that jury could consider extraneous offenses against same
victim of charged offense only for impeaching defendant’s credibility); see
also Sparks v. State, 366 S.W.2d 591, 592 (Tex. Crim. App. 1963) (same).

The trial court erred by giving the jury an
instruction that limited the extraneous offenses to an improper purpose—passing
on the credibility of Rivera’s testimony.  Because no objection was made to
this charge error, we review it for “egregious” harm.  Egregious errors “affect ‘the very
basis of the case,’ ‘deprive the defendant of a valuable right,’ or ‘vitally
affect a defensive theory.’”  Ngo, 175 S.W.3d at 750
(quoting Hutch
v. State, 922
S.W.2d 166, 171 (Tex. Crim. App. 1996)).  “[W]hether the error was so
egregious that a defendant was denied a fair and impartial trial” requires us
to consider: (1) the entire jury charge; (2) the state of the evidence; (3) the
arguments of counsel; and (4) any other relevant information in the record.  Ngo, 175 S.W.3d at 750 n.48
(citing Almanza, 686 S.W.2d at 171).

The charge’s application paragraphs tracked the
language of the indictment and instructed the jury to find Rivera guilty only
if it found beyond a reasonable doubt that he had committed the offenses as
alleged in the indictment, and the charge instructed the jury to acquit Rivera
if it was unable to find guilt beyond a reasonable doubt.

The State argues that Rivera did
not suffer egregious harm but actually benefited from the instruction
because (1) the evidence was “admitted for all purposes” and (2) the court
could have limited the jury’s use of extraneous offense evidence to “passing
upon the question of whether the act as alleged in the indictment actually
occurred.”    We agree in part with
the State because the purported “extraneous” acts could have been prosecuted
under the indictment and were not extraneous offenses when admitted.  See
Shea v. State, 167 S.W.3d 98, 104 (Tex. App.—Waco 2005, pet. ref’d). 
And to the extent those acts became extraneous offenses when the State made its
election, an
appropriate instruction would have limited the jury’s consideration of that evidence for its bearing on the state of
mind of Rivera and A.W. and on their previous and subsequent relationship.

Whether the credibility instruction was more
beneficial to Rivera than a state-of-mind/relationship limiting instruction is
a close call (and one in the eye of the beholder).  Moreover, the harm to
Rivera must be actual, not just theoretical.  See Almanza, 686
S.W.2d at 174.  Because the evidence was admissible under article 38.37, the
harm, if any, to Rivera from the erroneous limiting instruction was negligible,
as the State did not mention the instruction in closing argument.

We next review the state of the evidence. 
In addition to A.W.’s testimony discussed above, A.W.’s mother, M.R., also
testified.  A.W. first told M.R. about the abuse.  M.R. testified that A.W.
described Rivera’s “private area.”  M.R., having had a sexual relationship with
Rivera, confirmed A.W.’s description.  Debbie McElveen, a sexual assault nurse
examiner, examined A.W. and discovered some abrasions.  Dr. Ann Sims testified
that McElveen’s exam revealed that A.W.’s hymen was narrowed, dark red, and
irritated, which could result from either abuse or other circumstances. 
Nevertheless, Dr. Sims testified that the medical evidence was consistent with
A.W.’s testimony.  As previously discussed, Investigator Marshall testified
that Rivera eventually confessed to assaulting A.W.

In closing argument, the State made little mention
of the extraneous offenses, and did not mention the erroneous instruction at
all.  In its rebuttal the State made it very clear that Rivera’s credibility
was at issue, but it was the defense that first mentioned the number of “times”
of the alleged acts committed against A.W. when it sought to cast doubt on
A.W.’s testimony.

In conclusion, we cannot say that Rivera suffered
egregious harm as a result of the court’s error.  See Ngo, 175 S.W.3d at 743-44;
see also Almanza, 686 S.W.2d at 171.
Having found error but no egregious harm, we overrule Rivera’s first and second
issues.  The trial court’s judgment is affirmed.

 

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna       

(Chief Justice Gray concurs in the
judgment affirming the conviction but not the opinion of the Court without a
separate opinion)

Affirmed

Opinion delivered and
filed July 5, 2007

Publish

[CR25]

 









[1]               Although Rivera states that “the extraneous
offenses were by the victim,” he points to no place in the record other than
A.W.’s testimony regarding the number of acts.  We presume that this is the
“extraneous” offense evidence of which he complains.  This testimony was
elicited from A.W. by the State and repeated by the defense during
cross-examination.